# APPELLATE DIVISION

OF THE

# SUPREME COURT

OF THE

## STATE OF NEW YORK

---

HORACE GOLDIN, Appellant, v. CLARION PHOTOPLAYS, INC., Sued Herein as WEISS BROTHERS CLARION PHOTOPLAYS, INC., and ALEXANDER FILM CORPORATION, Respondents.

First Department, July 14, 1922.

Injunction — action to restrain defendants from exhibiting or distributing motion picture entitled " Sawing a Woman in Half," showing illusion of severing human body in two parts, and manner in which it was accomplished — injunction pendente lite granted on affidavits showing that plaintiff originally conceived illusion and produced it on stage under said title and that exhibition of said motion picture would destroy value of plaintiff's act.

In an action to restrain the defendants from exhibiting, distributing or otherwise dealing in a motion picture entitled " Sawing a Woman in Half " or " Sawing a Lady in Two " or such part thereof as shows or purports to show the illusion of severing a human being into two parts and the manner in which said illusion is accomplished, an injunction *pendente lite* should be granted on affidavits by the plaintiff showing that the illusion of dividing a human body in two parts was originally conceived by him; that he had produced it on the American stage himself and realized a large income therefrom; that it was being produced by others with his permission on the payment of royalties; that imitations of said act had been restrained by injunctions granted on application of the plaintiff against others than the defendants; that the defendants had not merely imitated or copied the illusion of which the plaintiff is the creator; but they have undertaken to give a title to the picture which is precisely the same title under which the plaintiff has continuously produced his act; that unless the production of the moving picture is restrained, the plaintiff's act will be rendered valueless, since the value of the act lies in the mystery surrounding the apparent severing of a human body in two parts, and where the only proof offered by the defendants to show that the act was not original with the plaintiff was from certain books which described somewhat similar acts but where in every case there was no resemblance between the methods employed by the plaintiff and those producing the similar acts.

APPEAL by the plaintiff, Horace Goldin, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 20th day of May, 1922, denying plaintiff's motion for an injunction *pendente lite.*

*House, Grossman & Vorhaus* [*Avel B. Silverman* of counsel], for the appellant.

*Harry G. Kosch* of counsel [*Milton H. Reuben* with him on the brief], for the respondents.

DOWLING, J.:

Plaintiff appeals from the denial of his motion for an injunction *pendente lite* restraining the defendants from exhibiting, distributing or otherwise dealing in and with a motion picture, or photo play, entitled " Sawing a Woman in Half ", or " Sawing a Lady in Two," or such part thereof as shows or purports to show the illusion or act of severing a human being into two parts, or which shows, or purports to show, the manner in which the said illusion is accomplished.

The following facts satisfactorily appear from the affidavits submitted on the motion. Plaintiff for twenty-five years last past has been engaged in the theatrical profession in this country and elsewhere throughout the world, presenting to the public in theatres and other places of amusement, new, novel and extraordinary productions more particularly known upon the stage as illusions or magic. The success of these illusions depends upon the inability of the average audience to grasp by observation the method employed by the performer, and their value, therefore, depends upon the degree of mystery in which the performer is able to envelop the means which he uses to accomplish the end.

Beginning in 1911 plaintiff was engaged in exhibiting an act which he had conceived some years before, known as " Vivi Section," which consisted of an illusion by which various parts of the human body were apparently severed therefrom and subsequently joined together. This act plaintiff produced himself, or it was shown under license granted by him, in Great Britain, Egypt, China, Japan and Java, among other countries. As the result of his experience with this act, plaintiff conceived the idea that the illusion would be more effective if an entire body were apparently separated into two parts and, after devoting a great deal of time and thought to the subject, he finally, in the year 1919, perfected such an illusion and offered it for exhibition by himself, under the name " Sawing a Woman in Two " or " Sawing a Lady in Half." It was offered at that time to one Ringling who was interested in circus shows as well as in the production of stage illusions.

In April, 1921, plaintiff entered into a contract with the leading vaudeville theatres in the United States under the direction of the Keith interests, for the production of the said illusion upon the stage, and since that time he has publicly presented the same in the leading vaudeville theatres in this country, either in person or through other performers, to whom he delegated the right to use the apparatus or other properties necessary. The act was produced in first-class theatres, the remuneration received by plaintiff under his contracts amounted in some weeks to more than $2,000, and he had reason to believe that he could secure bookings for the act for an unlimited period of time, as it was in great demand due to its drawing power and the apparent inability of audiences to grasp or explain the so-called mystery. The act has always been produced by plaintiff under the title " Sawing a Woman in Two " or " Sawing a Lady in Half " which he himself devised and first used, and these titles have become identified with plaintiff's name to such an extent that theatre managers and the public immediately connect the two.

As one of the results of plaintiff's success, many imitations of his act have been attempted to be given by other persons, and he has been compelled to apply for injunctions against the imitators; he has obtained such injunctions in the District Court of the United States for the Southern District of Illinois, the District Court of the United States for the Western District of Pennsylvania, and the Court of Common Pleas in Marion county, in the State of Ohio.

Plaintiff has continuously asserted his sole right to the production of the illusion in question and has advertised in the theatrical newspapers to that effect.

The defendants are engaged in the motion picture business, the Clarion Photo Plays, Inc., being a manufacturer of such pictures, and the defendant Alexander Film Corporation being a producer thereof. The first named defendant has produced a motion picture film advertised by it under the title " Sawing a Lady in Half," which as has been shown is the title used for years by plaintiff in advertising his illusion and which has become connected and associated with his name in that regard. The second named defendant has acquired from the other defendants positives and negatives of the film, by purchase or otherwise, with the right to exhibit the same in the State of New York and elsewhere, and with the further right to license and contract with exhibitors to exhibit such film. While the details of the illusion purporting to be exposed by the defendants vary in some particulars from the manner in which plaintiff produces his illusion, the conclusion cannot be

First Department, July, 1922. [Vol. 202

escaped that the purpose of the defendants in the making and exhibition of their picture is to unlawfully and unfairly take advantage of the success which has rewarded the plaintiff's initiative and to deprive him of the fruits of his ingenuity, expense and labor. The main object of the film in question is to portray the severing of a human being into two parts and the restoration thereof intact. Not merely have defendants imitated or copied the illusion of which plaintiff is the creator, but they have undertaken to give a title to their picture which is precisely the same title under which the plaintiff has continuously produced his act. The defendants claim that plaintiff is not the creator of a new and unusual act and did not devise the illusion in question. But the evidence sought to be adduced in behalf of that contention is not convincing and by no means answers the plaintiff's claims. For example, defendants claim there is no novelty in the illusion because in the British Museum there is an Egyptian papyrus which contains an account of a magical seance given by a certain Tchatchaem-ankh before King Khufu, B. C. 3766, and wherein it is stated of the magician: " He knoweth how to bind on a head which hath been cut off," and in proof of this they refer to a publication called " Magic " written by one Albert A. Hopkins, and published in New York city in 1897. But upon examination of the said book it appears that the remaining part of the sentence in question is " he knoweth how to make a lion follow him as if led by a rope, and he knoweth the number of stars in the house (constellation) of Thoth," but while the author of the books suggests that the first of these alleged facts was accomplished by hypnotism and adds, " The decapitation trick is thus no new thing," he offers no explanation as to how it was accomplished.

Defendants further refer to pages 48 and 49 of the same publication wherein a trick is shown, known as " Decapitation," but this is accomplished by means of a dummy head and bears no analogy to the plaintiff's illusion nor is the other act described therein, apparently performed upon the body of a clown, in any way as complete a mystification nor carried to as successful a conclusion as the plaintiff's act. Great stress is also laid upon the description by Robert Houdin, in his " Memoirs " published in English in Philadelphia in 1859, of an illusion produced by one Torrini in Constantinople in the eighteenth century known as the " Two Pages." But, similarly, there can be found no resemblance between the methods employed to accomplish the result in the variations of this illusion which Houdin described and the means resorted to by the plaintiff.

Defendants furthermore refer to the Indian basket trick, but

that bears no resemblance to the plaintiff's illusion. For obvious reasons the details wherein the various illusions differ in principle and method from plaintiff's creation will not be discussed herein.

The defendants further contend that their moving picture is not intended to expose the method by which plaintiff performs his illusion, but that it is a repetition of a method used by one Coutts, who claims to be an owner of an act which he has performed in vaudeville, known as " Sawing a Lady in Half; " but he has not shown that he had preceded the plaintiff in the creation of the act in question, or that it is anything save an imitation of plaintiff's act, with points of difference intended to save him if possible from the consequences of his simulation. While the defendants strenuously deny that plaintiff originated the act in question, it appears that Coutts' modification or imitation of plaintiff's methods is an adaptation of the method resorted to by one Selbit to produce the illusion in question and plaintiff has already obtained an injunction against Selbit to prevent his reproducing the act in question.

Furthermore, plaintiff produces certain affidavits which seem quite convincing that plaintiff really originated the illusion in question. Harry Houdini, a producer of magical feats and illusions since 1882, and president of the Society of American Magicians and of the Magicians' Club of London, states that so far back as his memory and records go, he is positive that he never witnessed a production of the illusion " Sawing a Woman in Half " by any one other than the plaintiff. He also swears that the performance of plaintiff and those attempted to be made by defendants in the motion picture are not materially different, and that defendants' production exactly reproduces the illusion of Selbit, who, as has been said, plaintiff has already enjoined in the Ohio State court. Houdini is the author of a book called " The Unmasking of Robert Houdin " and he verifies the claim that the illusion of the " Two Pages," described by Houdin, is impractical for modern production and could not now be presented upon the stage, and is distinctly different from plaintiff's act. Something more is required than merely the development of the theory of an illusion; to be successful, he swears, it must be so carried out as to completely deceive the public and by means which it cannot grasp.

Servais Le Roy, a professional magician for over thirty-five years, has been producing the illusion in question for many weeks under a license from the plaintiff for which he pays him the sum of $250 weekly, which, he says, is the highest royalty ever paid to a creator of an illusion or magical performance, this being due to the great success it has achieved in the theatrical field. Naturally, he recognizes plaintiff's right of priority or he would not be paying this

amount. He also swears that the production of this motion picture film will ruin plaintiff's performance and prevent the booking of further dates.

Carl Rosinni, also a stage magician for more than twenty years, makes affidavit that the plaintiff was the first person to conceive this particular illusion and to produce it upon the stage, and that he was present in the machine shop of Howard Thurston, the well-known magician, when plaintiff was constructing for Thurston the apparatus with which the latter was to produce the act under plaintiff's license. He swears to the identity of the act of plaintiff and that sought to be shown by defendant.

Joe Dolan, a vaudeville performer for twenty years and an exhibitor of magical feats and illusions, swears that no other theatrical performer or magician had produced this illusion known as " Sawing a Woman in Half " prior to plaintiff's presentation thereof. He avers that the act shown by the defendants and claimed to have been performed by Coutts has been taken directly from that of Selbit, hereinbefore referred to.

Adelaide Herman, the widow of Alexander Herman, makes affidavit that her husband never produced the act in question, and during her connection with his performances, which lasted over thirty years, she never heard of such an act being performed.

Harry Thurston, a stage magician, makes affidavit that the illusion " Sawing a Woman in Half " is the sole invention of the plaintiff, who, at various times, in his presence, built, improved and perfected his original idea of the illusion in Thurston's workshop at Whitestone, L. I. For the privilege of using the illusion he allowed plaintiff to build the original outfit at his workshop and paid him about $2,000 in cash and labor to assist in completing the original equipment.

It is shown that as the result of the motion picture in question attempting to expose or explain the manner in which plaintiff performs his illusion, it is deemed by the management of the Keith circuit, whereon plaintiff has exhibited the same for a long time, to have the effect of depreciating the value of plaintiff's act to such an extent that, as they have advised plaintiff in writing, it would render plaintiff's act absolutely valueless, since the very mystery or trick of the act would be gone; and, therefore, if the defendants' picture is exhibited in the same towns where the said Keith circuit had booked plaintiff's act, they notified him that it would be necessary for them to cancel his act therein.

Upon the facts disclosed by the affidavits herein, plaintiff has satisfactorily established that he is the originator of the illusion in question, which has achieved a great success under the title devised

by him of " Sawing a Woman in Half " or " Sawing a Lady in Half," and that his creation of the illusion has been so universally recognized that the title thereof is in the public mind associated with his own name. The result of his ingenuity and skill has been to produce for him very large financial returns, with a reasonable prospect of their continuance for a long time to come.

The defendants have availed themselves of the very same title as that devised by plaintiff and have made use as well of an imitation or modification of his act which apparently produces the same result, and the effect of which on the public is to produce the same illusion as that which plaintiff produces. The affidavits lead irresistibly to the conclusion that the defendants have simply sought unfairly and unjustly to profit by plaintiff's success, by adopting the name which he gave to his illusion and by copying his methods, an unfair competition and unreasonable interference with plaintiff's rights which the courts should and will prevent.

The order appealed from should, therefore, be reversed, with ten dollars costs and disbursements to appellant, and the motion granted, with ten dollars costs, upon plaintiff giving an undertaking, the amount of which will be provided for by the order.

Settle order on notice, and both parties may present a memorandum therewith giving their views as to what the amount of such undertaking should be.

CLARKE, P. J., SMITH, PAGE and GREENBAUM, JJ., concur.

Order reversed, with ten dollars costs and disbursements, and motion granted, with ten dollars costs, on plaintiff's giving an undertaking, the amount of which will be provided in the order. Settle order on notice.